# CASES

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF SOMERSET,

ARGUED AT JUNE TERM, 1842.

---

JOHN G. DUDLEY *versus* AURIN Z. LITTLEFIELD & al.

A note, given to J. M. P. and J. W., who were copartners in the purchase and sale of lands, as the consideration of a deed of certain land, was indorsed by one of them by the partnership name of P. & W. by the prior consent of the other who was not then present, in payment of a debt due by them; and *it was held*, that the note was legally indorsed and transferred thereby.

Where a note was signed by one of two copartners in trade, by the name of their partnership firm, and given as the consideration for the purchase of real estate, conveyed to both by his procurement, to which the other had never assented, and of which he had no knowledge until afterwards, and this transaction was wholly out of the line of their business, and known to be so by the payees; but subsequently this partner, in his own name and under his own hand, joined with the other in a bond to a third person, stipulating to convey the same land on the performance of certain conditions, and at the same time disclaimed any interest therein, avowed that he did it only for the benefit of his copartner, and declared that he would never participate in the profits thereof; *it was held*, that he had so confirmed the doings of his partner, as to be holden on the note.

Where a note, given in the name of a partnership, was indorsed for a valuable consideration before it become payable, and the indorsee had no other knowledge of its origin, than that it was given for land purchased, *it was held*, that this was not sufficient notice to him, that the signature of the partnership name had been unauthorized.

If a promissory note has been indorsed and transferred to an indorsee for value before it fell due, and is available in his hands, want of consideration cannot be set up as a defence against his indorsee, although the latter had been notified before the transfer to him, that the note was without consideration.

ASSUMPSIT upon a note for $1625, bearing date August 17, 1835.

The testimony at the trial before WESTON C. J. is given in full in the report of the case, but as the substance will be found in the opinion of the Court, it seems to be unnecessary to make any additional statement.

After the evidence was all before the jury, the defendants contended that if the jury were satisfied, that the land, the conveyance of which formed the consideration of the note, was of no value, then there was no consideration for the notes of Pollard & Wheeler to Warren, and no consideration for the defendants' notes to Pollard & Wheeler.

The Judge ruled, that the land was of some value, and instructed the jury, that they were bound in law to consider it of some value ; that the value of land did not depend upon the uses to which it might be applied ; but if it had at the time a marketable value, whatever it could be sold for fairly, and without fraud, was its value ; that however worthless and useless lands or things might be for all necessary purposes of life, yet still, if they could be fairly sold for any thing, they had a marketable value, and whatever they could be sold for was their value ; that many vendible articles were found to be entirely useless, and yet still, what they could be sold for, was the true measure of their value ; that if there was no fraud, Warren could recover any notes given him for the land, and so also could Pollard & Wheeler, and the plaintiff claiming under them ; that any sum or land to the value of a barleycorn is a sufficient consideration to support a promise ; that if the defendants have paid more than the land is really worth to Warren and to Pollard & Wheeler, as there was value in the land, they are bound to pay all they promised for it by their notes ; that a gross inadequacy of consideration is evi-

dence of fraud ; but in this case there was an adequate consideration in the estimate they put upon it, if there was no fraud, especially as Warren made no representations, and Wheeler & Pollard examined the land for themselves.

The verdict for the plaintiffs was to be set aside, if the ruling or instructions were erroneous.

*Wells,* for the defendants, contended, that the dealing in lands on joint account, could give no power to one to indorse a note in the name of both. There can be no partnership in the purchase and sale of lands. The transfer must be made by deed, and one cannot sign for another without authority under seal. The note therefore was not legally transferred to the plaintiff, and the action cannot be supported. *Lowell* v. *Reding,* 9 Greenl. 85 ; Bayley on Bills, 49, 52, 115 ; *Smith* v. *Whiting,* 9 Mass. R. 334 ; *Pitts* v. *Waugh,* 4 Mass. R. 424 ; *Burgess* v. *Lane,* 3 Greenl. 165.

Littlefield & Kerswell were partners only in the purchase and sale of goods, and this note was given for the consideration of a tract of land. Kerswell could not lawfully make the partnership liable by a note given in the name of the firm by him without the knowledge of his partner. He gave no prior authority, or subsequent assent. Littlefield is not liable upon it. *Man. & Mech. Bank* v. *Winship,* 5 Pick. 11 ; *Munroe* v. *Cooper,* ib. 412. His subsequent signing of the deed, conveying away the land according to Kerswell's request, under protest that he would have nothing to do with it, cannot amount to a ratification. Kerswell procured the conveyance to him, and he was the proper person to take the land back. Littlefield's performing a mere act of common honesty, stating why he made the conveyance, cannot be construed into an affirmance of a contract made without authority from him.

The defendants had the same right to set up want of consideration in this suit, as if the action had been brought in the name of the payees. Warren, the first indorsee, was informed what the consideration of the note was, and indeed had an interest in it. The note was given for the same land purchased by the payees of Warren. *Knapp* v. *Lee,* 3 Pick. 452 ; *Hatch*

v. *Dennis*, 1 Fairf. 244. And the plaintiff was expressly informed by Littlefield of the facts, before he took the note.

The Judge erred in ruling, that the jury must necessarily consider the land to be of some value. It was not a question for him, but for the jury, to determine. And the decision made by the Judge was wrong, and founded on erroneous principles. It was that the value of the land was what it would sell for, and that having been sold for something, was conclusive evidence, that it was worth something. The practical effect of the ruling is, that if one man can cheat another in the sale of land, the price thus obtained is its true value. *Fowler* v. *Shearer*, 7 Mass. R. 22; *Dickinson* v. *Hall*, 14 Pick. 217; *Bliss* v. *Negus*, 8 Mass. R. 46; *Shepard* v. *Temple*, 3 N. H. R. 455; Bayley on Bills, 538; *Gates* v. *Winslow*, 1 Mass. R. 65; *Wyman* v. *Heald*, 17 Maine R. 329; *Cutler* v. *How*, 14 Pick. 293; 1 Story's Eq. 248.

*N. Weston*, for the plaintiff.

One partner may negotiate a note belonging to the partnership, and make use of the partnership name in so doing. It is wholly immaterial what the consideration was, provided the note belonged to both as partners. Besides, if the note belonged to them as joint owners, and not as partners, one with the assent of the other might make the indorsement in payment of a debt due from both. It is unnecessary to write the names at length, when the identity is proved.

Although Littlefield was not originally liable, and would not have become so, unless he adopted the act, yet this was done, and he became liable, when he entered into the new bond to a stranger, and joined in the deed. If he did not derive any benefit personally, but allowed his partner to have the whole, it could make no difference. He should have conveyed back to the grantor all interest he derived under the deed.

The note was clearly good in the hands of Warren, and the defendants could not set up want of consideration as a defence. Being available in his hands, he could sell it to any other person, who would succeed to all his rights, whatever notice the

purchaser might have had. *Smith* v. *Hiscock*, 14 Maine R. 449; *Trull* v. *Bigelow*, 16 Mass. R. 406.

There was no evidence in the case, that Warren ever saw the land, or knew any thing of it personally. Fraud was not pretended. The instruction, as matter of law without the illustrations, was merely this, that the marketable value of lands at the time, is the measure of value, where there is no fraud. Utility is not the only standard of value. A large portion of the articles sold have their value only in the fancy, such as diamonds and lace. There can be no other test of value in the transactions of life, than the marketable value at the time the contract is made or is broken.

The opinion of the Court, TENNEY J. taking no part in the decision, having once been of counsel in the action, was drawn up by

WHITMAN C. J. — The plaintiff sues as an indorsee of a note of hand, purporting to have been made by the defendants, to John M. Pollard and John Wheeler, payable to them or their order in two years from August 17, 1835; and indorsed in blank by Wheeler, by putting thereon the names " Pollard & Wheeler." And Wheeler was introduced by the plaintiff, at the trial and testified, that he was authorized by Pollard, to negotiate the note to Isaiah Warren, in payment of a debt, which was due to him from them; and that in pursuance thereof, he indorsed it as above; and delivered it to Warren, long before it became payable; who gave credit therefor by indorsing the amount on a note he held against them. He further testified, that he and Pollard were copartners in buying and selling land.

It was objected by the defendants, that there could be no such partnership; and that the indorsement of the note, in the manner above stated, was no transfer of it. These objections are believed not to be sustainable. We do not see why there may not be a copartnership in buying and selling land, as well as in any other vendible property. It is an agreement merely to share in the profit and loss of negotiations. The rules

for transferring land may be different from those for the transfer of personal estate ; but that can make no difference in the result, as to profit and loss.   Copartners in trade often connect the purchase and sale of real estate, with their other negotiations ; and the profit and loss relative thereto goes into the general account thereof; the only difference being, that a different form is used in transferring real estate from that which is requisite in the transfer of personal property. Notes, taken for the price of real estate, may be transferred, as if taken for any thing else ; and we cannot regard the transfer of the note, made as before stated, otherwise, than as effectual for the purpose.   It was an indorsement by a name which payees might well assume for the purpose ; and the indorsement may be well declared upon, as having been made by them, by the name of Pollard & Wheeler ; especially when accompanied, as in this case, by proof, that the indorsement was specially authorized by Pollard, the other payee.

It was next objected, on the part of Littlefield, one of the defendants, that the note was signed by his copartner in trade, by the name of their copartnership firm, and that it was given for the consideration for a purchase of real estate, to which he had never assented ; and in reference to the negotiation for which he had no knowledge, till after the purchase by his copartner ; and that the negotiation was wholly out of the line of the business of the copartnership, of which Pollard & Wheeler were well knowing.   To obviate this objection the plaintiff proved, that, after the purchase, a certain individual received a bond, signed by Kerswell & Littlefield, the said Littlefield having personally executed the same, in which it was conditioned, that the defendants would convey the land, so purchased by them, to him upon certain terms and conditions therein expressed, the said Littlefield, at the same time, disclaiming any interest therein, and avowing, that he only did it for the benefit of his copartner and declaring, that he never would participate in the profits thereof.   The Judge, sitting in the trial, nevertheless ruled, that this was a ratification of the purchase, and rendered the note, on this ground, unobjec--

tionable on the part of Littlefield. To this ruling the counsel for the defendants excepted. The fact being established, the ·Judge undertook to pronounce the legal effect thereof. This, it is believed, he might well do. But it is contended that he misjudged as to the legal effect of the act. It is insisted that Littlefield's constant declarations, that he would have nothing to do with the negotiation, and that he would not participate in the fruits thereof,. did away the effect of his act in executing said bond. To us it seems, that, to render his declarations available to himself, he should have done no act inconsistent therewith. If he would avoid a note given by his partner, in the partnership name, upon the ground that it was unauthorized by their course of business, he should wholly have abstained from doing any act, whereby the property, being the consideration for which the note was given, might become alienated to any third person. If he would rid himself of it, in any way, or do any act concerning it, he should have offered to the grantors a relinquishment of any possible benefit he might have it in his power to derive from it. In such case his acts would have been consistent with his declarations. But when he undertook to aid his partner, by agreeing to convey the land for his benefit, although upon a contingency, he cannot be regarded otherwise, than as having confirmed the doings of his partner, in making the purchase, so far at least as it respected their liability on the note in question.

But the case shows that Warren became the indorsee of the note, for a valuable consideration, and before it had become apparently discredited. And it does not appear that he had any other knowledge of its origin than, that it was given for the land. This could not afford him any ground to apprehend, that the signature of a partnership firm had been unauthorized. For it is certainly no uncommon occurrence for copartners to purchase land, and give their securities for the consideration in the partnership name. This could not fail to have been known to be the case, during the rage for speculation in wild lands, which characterized the period in which this note had its origin. A note so taken by an indorsee has been held

Dudley *v.* Littlefield.

to be available in his hands although it might have been given in the name of a partnership firm, in furtherance of a negotiation not within the scope of the partnership concern ; and even although the note were wholly without consideration in its inception.

It is said, however, that the note was given for the same land, which the payees had purchased of Warren ; and that he well knew the land to be valueless ; and, therefore, that the note was without consideration and void. But we do not see that the case presents the slightest evidence, tending to show any such knowledge on his part. It does not appear that he had ever seen the land ; and he found the payees willing to purchase of him, according to the weight of testimony, at one dollar and twenty-five cents per acre, after they had, with two assistants, been upon the land, and explored it to their satisfaction. And, moreover, we do not, by any means, gather from the testimony detailed in the case, that the land was to be considered as valueless. We therefore regard the note, while in Warren's hands, as having been valid and recoverable.

But it is further contended that the plaintiff, the present holder, who took the note of Warren, when overdue, had been previously cautioned not to purchase it, and had been told, by said Littlefield and others, that it was without consideration ; and had been signed by his (Littlefield's) partner, without any authority from him to use the partnership name for such purpose. The answer to all which is, that the note was, unquestionably, good in the hands of Warren, of whom the plaintiff purchased it ; and that Warren could lawfully transfer to any one else any claim, which he had by virtue of it. We therefore, consider the verdict of the jury to have been properly returned for the plaintiff ; and that judgment must be entered thereon.