### Hugh F. Eaton v. George H. Graham et al.

1. STATUTE OF FRAUDS—*Agreement for a Partnership to Deal in Lands, Not Within Statute.*—An agreement for a partnership, for the purpose of dealing and trading in lands for profit, is not within the statute, and the fact of the existence of the partnership, and the extent of each partner's interest, may be shown by parol.

2. SAME—*Action for Agreed Share of Profits of the Sale of Land.*— When the action is only for the agreed share of the profits of the sale of land, no agreement affecting the title to the land itself remaining executory, the statute, at least in this country, does not apply.

3. SAME—*Action for Benefits Derived from Executed Contract.*— Although a contract between parties is void because of the statute of frauds, if it has been executed an action will lie against the party receiving the benefits thereof as for money had and received.

**Bill for an Accounting.**—Error to the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge presiding. Heard in this court at the March term, 1902. Reversed and remanded, with directions. Opinion filed November 28, 1902.

CHARLES T. PALMER, attorney for plaintiff in error.

THOMAS J. WALSH, attorney for defendants in error.

MR. JUSTICE WINDES delivered the opinion of the court.

This was a bill filed by plaintiff in error against defendants in error for an accounting with reference to a certain alleged partnership between all these parties, relating to

Eaton v. Graham.

certain real estate in Hyde Park, Cook county, Illinois. The defendant in error Bartley interposed a demurrer to part of the bill and a plea to the residue. The demurrer was subsequently overruled on motion of the solicitor of said Bartley, who took leave to withdraw his plea and within five days to file several pleas to the bill. He filed a plea to the whole bill, to the effect, in substance, that the matters set up in said bill related to an interest in land and were not manifested by any writing, as required by the statute of frauds. On a hearing as to the sufficiency of this plea, the chancellor held that it was a sufficient defense to the bill and dismissed the bill at complainant's costs. From this decree this writ of error was sued out.

A preliminary question is presented by a motion of defendants in error to dismiss the writ of error for failure to file an abstract of the record, as required by rule 18 of this court. An abstract of the record was filed. Counsel have failed to make any suggestions in support of the motion, or to point out any insufficiency of the abstract. It seems in all respects sufficient, except the pages of the record, after the first four, do not appear in the abstract. The record is short, containing only the process, pleadings and a few orders, and we think that the motion should not be allowed.

The bill alleges, in substance, that in August, 1898, the defendants in error Graham and Calkins, were associated together in the real estate business in Chicago, and if not then partners, had many contracts and deals in connection with real estate transactions, and had a mutual interest in the transactions which led up to and were matters of inducement for the copartnership between complainant and defendants, hereinafter specifically detailed; that said contracts and agreements were taken for the mutual benefit of Calkins and Graham, although taken in the name of Calkins; that about August, 1898, complainant was authorized by Calkins and Graham to secure some person with sufficient capital, about $2,000, who would advance same and enable Calkins and Graham to complete the pur-

chase of certain lots on Grand Boulevard in Chicago
(describing same) on which Calkins, for himself and Graham,
had a contract of purchase with the owners thereof for
the sum of $12,000, and upon which they proposed to erect
an apartment building, for the erection of which they had
a contract with the Campbell Building Co., who were to
accept as part payment of the contract price, certain Georgia
lands held by Calkins; that Calkins and Graham also had
an arrangement for a building loan on the premises, which,
together with the Georgia lands, would enable them to
complete the purchase of the lots and pay the cost of the
building, with the exception of the sum of $2,000; that all
of the contracts were in the name of Calkins for the bene-
fit of Graham and Calkins, and were matters of induce-
ment to the making of the copartnership agreement between
complainant and defendants; that Calkins and Graham
authorized complainant to propose to the party furnishing
said $2,000, that the same should be returned to him imme-
diately after the building loan was made, and that he would
be allowed to take the title to the property in his own
name as security, and in his own name to let the contracts
for the building, and when completed cause the same to be
rented and collect the rents, and with the knowledge and
consent of all the partners cause the same to be sold, and
after the payment of said $2,000. that the net profits and
proceeds thereof should be divided, one-third to the party
furnishing said $2,000, one-half to said Calkins and one-
sixth to said Graham and to complainant " in equal pro-
portions, in consideration of complainant's services in the
premises in obtaining said money, and any further services
he might render in re-renting or re-sale of said property,
if any." The bill further alleges that in pursuance of this
agreement, he brought the matter to the attention of
defendant in error Bartley, who, being fully advised as to
the details thereof, as above stated, and in consideration of
being given an opportunity to become a copartner in said
undertaking, and of his share of the net profits aforesaid,
accepted said proposal, and thereupon agreed with Calkins,

Graham and complainant that he, said Bartley, would advance the sum of $2,000 upon the terms and conditions aforesaid; that in pursuance of said agreement Bartley did advance the sum of $2,000, paid the same to the owners of said lots, caused the title thereof, without the consent of complainant, to be conveyed to Mary V. Bartley, his wife, entered into contracts for said building, afterward changed the contracts from time to time, which increased the cost of the building, and furnished additional money.    Also, by agreement between all the parties, there being no change made as to the net proceeds to be realized from the undertaking, that pursuant to the agreement, Bartley did erect the building, caused his wife to convey the title to himself, for which conveyance there was no consideration, the same being made at her husband's instance, for the purposes of said copartnership; that the purchase price of the lots was paid out of the building loan, and said $2,000 furnished by Bartley, and he and his wife gave their trust deed to secure the building loan, and that the whole cost of the land and improvement was not to exceed $36,000; that Bartley, after May 1, 1899, rented the building, collected the rents thereof from that date to October 11, 1900, without the advice of or consultation with his copartners, and in violation of his agreement sold said premises for $60,000, on account of which he received $18,000 cash and took in exchange, as part of said consideration, certain other vacant lots on Drexel Boulevard (describing same) then valued at $42,000; that Bartley has since improved said Drexel Boulevard lots by apartment buildings, made loans thereon, without the consent of complainant, and invested a portion of said $18,000 cash in improvements thereon, and is now collecting the rents thereof.

The bill makes further allegations, not necessary to be stated, and alleges that the defendants, and particularly Bartley, have failed and refused to render any account to complainant of their acts and of said copartnership; also that Graham and Calkins have released all their interest in the Grand Boulevard lots to Bartley, and that complainant

has in all respects performed all the obligations on his part required of him by the terms of said copartnership agreement.

The bill prays an accounting as to the alleged copartnership undertaking, dealings and transactions, of the rents and profits of the Drexel Boulevard property, and that Bartley be decreed to pay to the complainant what shall appear due to him on such accounting; that said property be sold and complainant's proportionate interest therein be set over to him, and for general relief.

The statute (Ch. 59, Sec. 9, Hurd), relied on by defendant in error in support of his plea, is as follows :

" All declarations or creations of trusts or confidences of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party who is by law enabled to declare such trust or by his last will in writing; or else shall be utterly void and of no effect. Provided, that resulting trusts or trusts created by construction, implication or operation of law, need not be in writing, and the same may be by parol."

If the bill sets out sufficient facts to show a partnership, then, under the law, the plea is bad. Speyer v. Desjardins, 144 Ill. 641–8; Van Housen v. Copeland, 180 Ill. 74–82.

In the Speyer case the court, citing numerous authorities, say :

" It is well settled that an oral contract by two or more persons to purchase real estate for their joint benefit is within the statute; but it has been a mooted question whether a partnership can be created by parol for the purpose of buying or selling lands for profit. There is a very considerable conflict in the cases upon that question, but the decided weight of authority seems to have answered it in the affirmative. That an agreement for a partnership, for the purpose of dealing and trading in lands for profit, is not within the statute, and that the fact of the existence of the partnership, and the extent of each partner's interest, may be shown by parol, is now quite generally accepted as the established doctrine."

We are of opinion, however, that the allegations of the bill fail to show a partnership, and without restating them, it seems sufficient to say that they come clearly within the

case of Morton v. Nelson et al., 145 Ill. 586–91, in which the court, among other things, say:

" As respects the partnership, upon an examination of the record, it will be found that the evidence fails completely to establish a partnership existing between the parties. The agreement entered into between complainant and defendant was, in substance, one for the purchase of a single tract of land and the erection of a building upon it, the three to share equally in the net profits. The agreement contemplated a joint enterprise, relating to a single transaction, in which the parties had a joint interest in the profits. The land was purchased in the name of Nelson, a deed made to him, and a building was erected. But neither of the complainants advanced a single dollar in payment of the purchase money, or in payment of the cost of the building. The evidence fails to disclose any agreement under which Morton and Vogel, or either of them, were to be responsible for losses, or under which they were required to advance any money to pay for the premises, or to pay for the erection of the building. On the other hand it appears from the evidence that in March, 1889, when Dodson executed the contract of sale, Nelson paid $500, and on June 10th following he paid $2,500, and received a deed of the property, and at the same time he gave his own note and a mortgage on the premises to secure the balance of the purchase money, $18,000. The $2,500 was, in the first instance, borrowed by Nelson, on the indorsement of one Larson, a friend of Morton, but Nelson subsequently paid off the loan himself, and Morton and Vogel paid nothing whatever upon it. As to the money which paid for the building erected on the premises, the entire amount was procured by Nelson, and its repayment secured by a mortgage, executed in his own name, on the property. Morton and Vogel had nothing whatever to do with raising the money or erecting the building. The citation of authority is not required to establish the proposition that the transaction involved was not a partnership. We will, however, refer to Smith v. Knight, 71 Ill. 148, and the cases there cited. * * * Whether the title was placed in the name of Nelson, for the reason stated by Morton, or whether it was done because he furnished the money to make the first payment, is not, in the view we take of the case, material. Conceding the view of complainants, that the property was purchased by the three, and the title placed in the name of Nelson, under a verbal agreement that he should make a deed or execute

and deliver a declaration of trust to the complainants, which would invest them each with a one-third interest in the property, they can not recover, for the reason that the contract relied upon, if established by the evidence, related to a sale of lands or an interest therein, which, under the statute, to be valid, must be in writing and signed by the party alleged to have made the agreement."

Two cases more nearly alike than the above and the case at bar, except that in this case the profits were to be divided, while in the former the land was to be divided, can not be conceived.

If there was not a partnership, as it seems clear there was not, the plea is also bad, because there is no such interest in lands set forth as would bring the case within the purview of the statute. The interest, if any, of complainant, is in the profits to be derived from the alleged joint undertaking, and is not such an interest as comes within the prohibition of the statute. Browne on Stat. Frauds, Sec. 240, 260 and 261G.

In the section last cited the author says: "When the action is only for the agreed share of the profits of the sale of land, no agreement affecting the title to the land itself remaining executory, the statute (at least in this country), does not apply." See also, Trowbridge v. Wetherbee, 11 Allen (Mass.), 361, and cases cited.

There is no agreement here affecting the title to the land. Even if the agreement can be said to affect the title, it has been executed. The land has been sold and the proceeds invested in other property.

It is well settled that although a contract between parties is void because of the statute of frauds, if it has been executed, an action will lie against the party receiving the benefits thereof, as for money had and received. Browne on Stat. Frauds, Sec. 116; Pearce v. Pearce, 184 Ill. 289–93, and cases cited; Ry. Co. v. Wood, 189 Ill. 352–5; Booker v. Wolf, 195 Ill. 365–73, and Trowbridge case, *supra.*

An action under the facts alleged will therefore lie, whether the agreement is or is not within the statute.

In this case, taking the allegations of the bill to be true,

as we must, it appears that Bartley has received the bene-
fits of the alleged agreement, and is liable to account there-
for to complainant.   The bill states such a case as would
justify a court of equity in assuming  jurisdiction to take
the account.   It is true, the bill proceeds upon the theory
of a partnership, and prays relief upon that basis, but it
also prays for general relief, which is a sufficient prayer,
under the facts stated, to  justify the granting of relief
appropriate to the allegations of the bill.   It should be
added that, in so far as the bill seeks to reach any interest
in the lands described, it can not, in our opinion, be main-
tained.

There is no merit in the contention that the  court erred
in its ruling on the demurrer.   It was  waived by the plea,
and it was overruled on defendant's motion.

The decree is reversed and the cause remanded, and the
Superior Court is directed to overrule the plea.