WILLIAM SPRAGUE *vs.* GENERAL ELECTRIC COMPANY.

Berkshire.    November 26, 1912. — January 28, 1913.

Present: RUGG, C. J., MORTON, BRALEY, & SHELDON, JJ.

*Negligence. Agency. Practice, Civil,* Conduct of trial. *Evidence,* Opinion: experts.

In an action for personal injuries from being hit by the head of a hammer that came off the handle, when the plaintiff, in accordance with a general instruction of his employer and at the request of an electrical engineer of the defendant, was assisting such engineer in tightening bolts by holding a wrench on one of the bolts while the engineer struck the handle of the wrench with the hammer in order to set the bolt more tightly, there was nothing to show that the heads of such hammers came off frequently or that their coming off involved great danger. The plaintiff testified that he never had tightened bolts in that way before, and there was evidence that it was forbidden in the works of the plaintiff's employer, but there also was evidence that this method of tightening bolts was used by a great many electrical engineers. *Held,* that it was a question for the jury, whether the plaintiff was negligent in thus assisting in tightening the bolt, or whether in doing so he assumed the risk of an injury from the head of the hammer coming off.

In an action for personal injuries from being hit by the head of a hammer that came off the handle when the hammer was being used by a servant of the defendant, there was evidence that the head of the hammer came off either because it was not wedged properly or because it was not wedged at all. The plaintiff testified that immediately after the accident the defendant's servant showed the handle and the head to him and that there were no wedges in the handle. Another witness testified that the head was likely to come off if it was wedged on improperly. *Held,* that the questions whether the hammer was defective and whether in the exercise of due care the defendant's servant should have discovered the defect were for the jury, and that, if the defendant's servant was negligent in using the hammer, the defendant was liable for the injury caused by such negligence whether the hammer was furnished by the servant himself or by the defendant.

In an action for personal injuries from being hit by the head of a hammer that came off the handle, when used by a servant of the defendant whom the plaintiff was assisting, there was evidence that the defendant was engaged in installing an engine in a power house of the plaintiff's employer and that the plaintiff and his fellow employees had been told by their employer to assist the defendant's men all they could when they had a few minutes to spare, that the plaintiff, acting in pursuance of this general order, responded to a request of the defendant's servant to assist him in tightening a bolt by holding a wrench on the bolt while the defendant's servant struck the handle of the wrench with the hammer and that at the fourth blow thus struck by the defendant's servant the head of the hammer came off and hit the plaintiff, that the defendant's

servant whom the plaintiff was assisting had been sent by the defendant for the purpose of completing the installation of the engine and that he was the person in charge of the work and the only one there representing the defendant in connection with it.  *Held,* that the question, whether the plaintiff when assisting in tightening the bolt became a servant of the defendant so that his injury was caused by the act of a fellow servant, was one to be submitted to the jury with proper instructions.  *Held, also,* that, under the circumstances shown, the authority of the defendant's servant to ask the plaintiff for temporary assistance fairly could be presumed, and that, in rendering such assistance for the purpose of facilitating the work of his employer, the plaintiff did not cease to be the servant of such employer or lose his right to be protected from the carelessness of the defendant's servants.

Where the servant of one employer is assisting the servant of another in doing certain work, in order to make such assistant the servant of the person whose work he is doing it is necessary either that he should assent. expressly to a change of employers or that he should have had such notice and knowledge of the circumstances that his assent to the changed relations is to be presumed as matter of law from his conduct.

On an exception to the refusal of a presiding judge to strike out certain questions and answers that were not heard by the counsel for the excepting party, which was treated as waived because it was not argued, it was *said* that the matter clearly was one within the discretion of the presiding judge.

In an action for personal injuries from being hit by the head of a hammer that came off the handle, a witness, who is qualified as an expert, may be asked the question, "What causes a hammer to fly off the handle when the same is being used in the usual and proper way?" and may answer, "It would be improperly wedged.  The continual striking would jar it off," it being within the discretion of the presiding judge to admit the question and answer if he thinks that they will or may be of assistance to the jury.

MORTON, J.  This is an action of tort at common law for personal injuries caused by alleged negligence on the part of a servant of the defendant.  There was a verdict for the plaintiff, and the case is here on the defendant's exceptions in regard to the admission of evidence, the refusal of the presiding judge* to give certain instructions requested by the defendant, and to portions of the charge.

At the time of the injuries complained of the defendant company was employed in installing in the power house of the Pittsfield Electric Company an engine for which that company had contracted with the defendant, and which, according to the contract, the defendant was to install and start "and place in good operative condition."  The contract also required the defendant to furnish a competent man to superintend the work.  It had had an

---

* *McLaughlin, J.*

engineer there for that purpose, but at the time of the accident he had gone away and his place had been taken, or there was evidence tending to show that it had, by a man by the name of Leishman. There was evidence tending to show that the work of installation had not been entirely completed. As incident to and a part of that work, Leishman was engaged in tightening bolts to stop some small leaks in the steam chest. To assist him in doing that Leishman requested the plaintiff, who was an assistant engineer in the employ of the Pittsfield company, to hold a wrench on one of the bolts while he struck the handle in order to set the bolt up more tightly. Leishman struck three blows with the hammer. At the fourth blow the head of the hammer came off and hit the plaintiff, causing the injuries complained of. There was evidence tending to show that the defendant was behind in the performance of its contract, and that in order to hasten the work the plaintiff and other employees of the Pittsfield company had been told by those in charge of that company to assist the defendant's men all they could when they had a few minutes to spare, and that it was pursuant to orders thus given that the plaintiff responded to Leishman's request to assist him. It did not appear, if material, that these orders were given at the request of or were known to the defendant company except as might be inferred from the acceptance of the assistance that was rendered.

The question of the plaintiff's due care was plainly, we think, for the jury. There was nothing in what he was requested to do that appeared to involve any danger. The hammer itself was a simple tool, and, though the heads of hammers sometimes come off, there was nothing to show that it happened so frequently, or was liable when it did happen to be attended by such dangerous consequences as to warrant us in holding as matter of law that the plaintiff was negligent in not examining it. The plaintiff testified that he never had tightened bolts in that way before, and there was evidence that it was forbidden in the plant of the Pittsfield company. But there was also evidence that this method was used by a great many electrical engineers, and it was for the jury to say whether the plaintiff was negligent in using it. For the same or similar reasons it could not be ruled as matter of law that he assumed the risk.

There was evidence that the head came off either because not

properly wedged on to the handle or because it was not wedged at all. The plaintiff testified that immediately after the accident Leishman showed the handle and the head to him, and there were no wedges in the handle. Another witness testified that the head was liable to come off if improperly wedged on. It was for the jury to say whether the hammer was defective and whether in the exercise of due care Leishman should have discovered the defect. It is immaterial whether the hammer was furnished by Leishman himself or by the defendant. In either case the defendant is liable for the injury caused by Leishman's negligence in using it. See *Crimmins* v. *Booth,* 202 Mass. 17, 24, 25.

It could not be ruled as matter of law that the plaintiff was a volunteer or a stranger in assisting Leishman. He was acting, or could be found to have been acting, under the orders of his employer and could not, therefore, be said to be either a volunteer or a stranger. Neither could it have been ruled as matter of law that he was a fellow servant of Leishman in the employ of the defendant company, or that Leishman was a fellow servant with him in the employ of the Pittsfield company, or that he was a fellow servant with Leishman of both companies. There was nothing to show that Leishman was in the employ of the Pittsfield Company, and it could not therefore have been ruled that the plaintiff was a fellow servant with Leishman in the employ of that company or of both corporations; and it would have been error for the presiding judge to have instructed the jury, as requested by the defendant, that they could so find. Whether the plaintiff became a servant of the defendant and a co-employee of that company with Leishman was left to the jury under instructions to which we think no just exception can be taken. To constitute the plaintiff a servant of the defendant it was necessary either that he should expressly assent to a change of employers, or should have had such notice and knowledge of the circumstances that his assent to the changed relations would be presumed as matter of law from his conduct. And the jury were in substance and effect so instructed. *Berry* v. *New York Central & Hudson River Railroad,* 202 Mass. 197. *Beauregard* v. *Benjamin F. Smith Co., ante,* 259.

The mere fact that acting under general orders from his employers to help the defendant's men he rendered assistance to Leishman at Leishman's request would not constitute him a servant of the

defendant. And the nature of the service rendered by him was such that it was or could be found to be fairly within the scope of Leishman's authority to request it. There was evidence tending to show that Leishman had been sent by the defendant for the purpose of making adjustments and completing the installation of the engine, and that he was the person in charge of that work and the only one there representing the defendant in connection with it. Under such circumstances his authority to ask such temporary or transient assistance as he might require of the plaintiff or others in the employ of the Pittsfield company could fairly be presumed. In rendering the assistance requested for the purpose of facilitating the work of his employer, the plaintiff did not cease to be a servant of the Pittsfield company or lose his right to be protected from the carelessness of the defendant's servants. *Welch* v. *Maine Central Railroad,* 86 Maine, 552. *Wright* v. *London & Northwestern Railway,* L. R. 10 Q. B. 298. *Eason* v. *Sabine & East Texas Railway,* 65 Texas, 577. *Street Railway* v. *Bolton,* 43 Ohio St. 224. *Meyer* v. *Kenyon-Rosing Machinery Co.* 95 Minn. 329. *Empire Laundry Machinery Co.* v. *Brady,* 164 Ill. 58. We see no error in regard to the instructions given or refused. *Bowie* v. *Coffin Valve Co.* 200 Mass. 571; 206 Mass. 305, is easily distinguishable.

We pass to the matters of evidence. The exception to the refusal of the presiding judge to strike out the questions and answers that were not heard by the counsel for the defendant has not been argued by the defendant and we treat it as waived. The matter was clearly one within the discretion of the presiding judge.

The only exception in relation to evidence which has been argued by the defendant was to allowing a witness introduced by the plaintiff as an expert to be asked, "What causes a hammer to fly off the handle when the same is being used in the usual and proper way?" and to answer, "It would be improperly wedged. The continual striking would jar it off." If the presiding judge thought that the question and answer would or might be of assistance to the jury we cannot say that he was wrong in allowing them. *Bowie* v. *Coffin Valve Co.* 200 Mass. 571, 578.

*Exceptions overruled.*

*C. H. Wright,* for the defendant.
*J. M. Rosenthal,* for the plaintiff.